1  Vanessa R. Waldref
2  United States Attorney
   Eastern District of Washington
3  Lisa C. Cartier Giroux
4  Assistant United States Attorney
   Post Office Box 1494
5  Spokane, WA 99210-1494
6  Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEC 1 3 2024

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

7
8              UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF WASHINGTON
9
10 UNITED STATES OF AMERICA,

11              Plaintiff,                    Case No.: 2:23-CR-00133-SAB

12      v.                                   Plea Agreement

13
14 FILIBERTO SANTANA,

15              Defendant.

16

17      Plaintiff United States of America, by and through Vanessa R. Waldref,

18 United States Attorney the Eastern District of Washington, and Lisa C. Cartier

19 Giroux, Assistant United States Attorney for the Eastern District of Washington,

20 and Defendant, Filiberto SANTANA ("Defendant"), both individually and by and

21 through Defendant's counsel, Brooke Hagara, agree to the following Plea

22 Agreement.

23      1.    Guilty Plea and Maximum Statutory Penalties

24      Defendant agrees to enter a plea of guilty to the Indictment filed on

25 November 21, 2023, which charges Defendant with two counts of Assault on a

26 Federal Officer and Employee – Use of a Dangerous Weapon and Infliction of

27 Bodily Injury, in violation of 18 U.S.C. § 111(a)(1) and (b), a Class C felony.

28      Defendant understands that the following potential penalties apply:

PLEA AGREEMENT - 1

Count 1:

    a.    a term of imprisonment of not more than 20 years;

    b.    a term of supervised release of not more than 3 years;

    c.    a fine of up to $250,000;

    d.    restitution; and

    e.    a $100 special penalty assessment.

Count 2:

    a.    a term of imprisonment of not more than 20 years;

    b.    a term of supervised release of not more than 3 years;

    c.    a fine of up to $250,000;

    d.    restitution; and

    e.    a $100 special penalty assessment.

2.    <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

    a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of

PLEA AGREEMENT - 2

incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a.    sentencing is a matter solely within the discretion of the Court;

    b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    pleading guilty in this case may have immigration consequences;

PLEA AGREEMENT - 3

b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

a.    the right to a jury trial;

b.    the right to see, hear and question the witnesses;

c.    the right to remain silent at trial;

d.    the right to testify at trial; and

e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

PLEA AGREEMENT - 4

6. <u>Elements of the Offense</u>

The United States and Defendant agree that to convict Defendant of:

<u>Count 1</u>: *Assault on a Federal Officer and Employee – Use of a Dangerous Weapon or Infliction of Bodily Injury*, in violation of 18 U.S.C. § 111(a)(1) and (b), the United States would have to prove the following beyond a reasonable doubt.

    a.    *First*, on or about January 3, 2023, within the Eastern District of Washington, Defendant forcibly assaulted a federal officer, federal employee, or a person assisting such an officer or employee, as designated in 18 U.S.C. §1114, specifically, W.B., a United States Marshal;

    b.    *Second*, Defendant did so while W.B. was engaged in, or on account of his official duties; and

    c.    *Third,* Defendant used a dangerous weapon or inflicted bodily injury.

<u>Count 2</u>: *Assault on a Federal Officer and Employee – Use of a Dangerous Weapon or Infliction of Bodily Injury*, in violation of 18 U.S.C. § 111(a)(1) and (b), the United States would have to prove the following beyond a reasonable doubt.

    a.    *First*, on or about January 3, 2023, within the Eastern District of Washington, Defendant forcibly assaulted a federal officer, federal employee, or a person assisting such an officer or employee, as designated in 18 U.S.C. §1114, specifically, B.P., a federal Task Force Officer with the United States Marshals Service;

    b.    *Second*, Defendant did so while B.P. was engaged in, or on account of his official duties; and

    c.    *Third,* Defendant used a dangerous weapon or inflicted bodily injury.

7.    Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

In mid-December of 2022, the Columbia River Drug Task Force requested the United States Marshals Service (USMS) assist in locating and arresting Defendant and his girlfriend, E.S., who law enforcement believed had active state arrest warrants. On January 3, 2023, the USMS received information that a detective had spotted Defendant and a female in Cashmere, WA in a silver 2014 Chevrolet (Chevy) Equinox with a red box strapped to the top. The detective had followed the stolen Chevy Equinox, which had a license plate that also came back stolen off another vehicle.

USMS Task Force Officer (TFO) B.P. located the Chevy and observed it park at a "Park and Ride" in Wenatchee. TFO B.P. recognized the driver as E.S. and the front passenger as Defendant. Because of the limited access into and out of the parking area and lack of people in the area, the USMS decided that the "Park and Ride" was the best location to try to stop the Chevy and take the two occupants into custody. Officers pinned the Chevy between two patrol cars and cars parked in the lot. One of the patrol cars that pinned the Chevy had its lights on. Multiple uniformed law enforcement officers arrived in marked cars with lights on.

TFO B.P., Deputy US Marshal W.B., and a Wenatchee Police Department Detective approached the Chevy, all were wearing tactical uniforms with visible markings and words identifying them as Law Enforcement (LE) officers. They

PLEA AGREEMENT - 6

1   also repeatedly announced themselves as "police", told the occupants they were

2   under arrest, and demanded that the occupants put their hands up where they could

3   be seen. In response, Defendant proceeded to roll up the front passenger window

4   which had been down. E.S. placed the car in reverse and then in drive,

5   continuously spinning the tires in the snow to escape (without success) as the LE

6   officers loudly repeated that they were police and continued to order the occupants

7   to put their hands up and commanded E.S. to stop driving.

8        Deputy US Marshal W.B. used a Halligan tool to break the rear passenger

9   window because he did not want to injure Defendant by shattering the front

10  passenger glass. Throughout the entire interaction, Defendant and E.S. refused to

11  shut off the car, place it in park, or raise their hands. Instead, Defendant

12  continuously lowered his hands down and out of sight near his seat area which

13  appeared to officers as if he was searching for something. The Wenatchee

14  Detective and Deputy US Marshal W.B. took their tasers out; TFO B.P. drew his

15  firearm and pointed at the car as lethal coverage for the Wenatchee Detective and

16  Deputy US Marshal W.B. Because Defendant and E.S. would not comply with the

17  repeated lawful orders, Deputy US Marshal W.B. tased E.S. and the Wenatchee

18  Detective tased Defendant. Despite being tased, both occupants did not submit;

19  they were wearing thick layers of clothing and the taser prongs did not work

20  effectively. Instead of submitting, Defendant attempted to remove the taser wires

21  from both himself and E.S.

22        E.S. then rolled down the driver's side rear passenger window. The LE

23  officers believed that they would try to flee out that window as the front doors

24  were both pinned. Defendant continued to reach around near his seat. He then

25  grabbed an item from his seat area, spun his body left, gripping the object in his

26  hand using a pistol grip, and pointed it at W.B., B.P., and the Wenatchee Detective.

27  All three LE officers initially believed it was a firearm and feared that Defendant

28  was about to use lethal force against them. Deputy US Marshal W.B., who was

PLEA AGREEMENT - 7

closest to Defendant, observed the object held by Defendant more clearly as Defendant began to spray a liquid spray directly at them. Deputy US. Marshal W.B. saw the spray, he yelled out, "he's got spray!" He, the Wenatchee Detective, and B.P. backed up away from the rear passenger side window but only after being struck by the spray. Seeing the officers back off, Defendant then jumped into the backseat and out the driver's side rear window where he was ultimately subdued. Even outside the Chevy, Defendant resisted arrest by moving his arms and pulling away from the officers while cursing at them.

E.S. was pulled out the window by officers, and she similarly resisted arrest by moving her arms and trying to get up from the ground and pulling away. LE officers were able to handcuff her after a brief struggle. The Chevy was never placed into park; LE officers had to shift it into park and shut it off once the occupants were out of the vehicle.

Body camera video captured the encounter between Defendant and law enforcement.

Deputy US Marshal W.B. was hit directly in the eyes by the spray. He did not go to hospital, but he did see the EMT on scene. He was given a saline solution to flush his eyes and eye drops. W.B.'s eyes burned the rest of the night and remained very irritated into the following days. A photo taken on scene depicts the irritation to his skin and eyes.

TFO B.P. also was struck by the spray. He breathed the spray in, and his lungs burned and felt irritated for at least 24 hours. He did not seek medical treatment.

The spray the Defendant used on the law enforcement officers was Lucas Interior Spray, an interior detail spray. The ingredients include pentamethyl-sebacate which will cause skin and eye irritation upon contact. Lucas warns that the product can irritate the skin and eyes, and to avoid breathing it in, and directs use in a ventilated area. Lucas also recommends the use of protective gloves and

PLEA AGREEMENT - 8

1   eye protection when using the product because of its potential effect on the eyes

2   and skin on contact.

3       A state search warrant was sought, and the car was searched.  Multiple

4   stolen items were in the car, including a stolen Ruger 22/45 Marksman handgun,

5   and multiple magazines that fit the Ruger.  The Ruger was found in the driver's

6   side front door.  There were also several magazines from other caliber firearms and

7   a holster. 9mm ammunition was also recovered.

8       All of the foregoing events occurred in the Eastern District of Washington.

9       8.    The United States' Agreements

10      The United States Attorney's Office for the Eastern District of Washington

11  agrees not to bring additional charges against Defendant based on information in

12  its possession at the time of this Plea Agreement that arise from conduct that is

13  either charged in the Indictment or identified in discovery produced in this case,

14  unless Defendant breaches this Plea Agreement before sentencing.

15      9.    United States Sentencing Guidelines Calculations

16      Defendant understands and acknowledges that the United States Sentencing

17  Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine

18  Defendant's advisory range at the time of sentencing, pursuant to the Guidelines.

19  The United States and Defendant agree to the following Guidelines calculations.

20          a.    *Base Offense Level*

21      The United States and the Defendant agree that the base offense level is 14.

22  U.S.S.G. § 2A2.2(a).

23

24          b.    *Special Offense Characteristics*

25  i.      The United States will recommend that an additional 4 levels be

26          applied because Defendant used a dangerous weapon.  U.S.S.G.

27          § 2A2.2(b)(2)(B).  Defendant can argue against the application.

28

PLEA AGREEMENT - 9

i.      The United States and the Defendant agree that an additional 3 levels
        be applied because a victim(s) sustained bodily injury.  U.S.S.G.
        § 2A2.2(b)(3)(A).

ii.     The United States and the Defendant agree that an additional 2 levels
        will be applied because Defendant was convicted under 18 U.S.C.
        §111(b).  U.S.S.G. § 2A2.2(b)(7).

iii.    The United States and the Defendant agree that an additional 6 levels
        will be applied pursuant to U.S.S.G. § 3A1.2(b).

c.      *Acceptance of Responsibility*

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

i.      accepts this Plea Agreement;

ii.     enters a guilty plea at the first Court hearing that takes
        place after the United States offers this Plea Agreement;

iii.    demonstrates recognition and affirmative acceptance of
        Defendant's personal responsibility for Defendant's
        criminal conduct;

iv.     provides complete and accurate information during the
        sentencing process; and

v.      does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

d.      *Agreements Regarding Representations to the Court*

The United States has a duty of candor to the tribunal.  If the United States

PLEA AGREEMENT - 10

1   and Defendant do not agree on the appropriate length of incarceration, the

2   appropriate length or applicable terms of supervised release, and/or the correct

3   guidelines calculations, variances, departures, and/or enhancements, the United

4   States reserves the right to respond to any and all arguments made by Defendant,

5   on any bases the United States deems appropriate, at all stages of this criminal

6   case.

7       Defendant may make any arguments it deems appropriate, at all stages of

8   this criminal case.

9       With regard to all briefing, submissions, and hearings in this criminal case,

10  the United States and Defendant agree to the following provisions:

11      i.    The United States and Defendant may each respond to

12            any questions from the Court or United States Probation

13            Office;

14      ii.   The United States and Defendant may each supplement

15            the facts under consideration by the Court by providing

16            information the United States or Defendant deems

17            relevant;

18      iii.  The United States and Defendant may each present and

19            argue any additional facts that the United States or

20            Defendant believe are relevant to the Sentencing

21            Guidelines computation or sentencing;

22      iv.   The United States and Defendant may each present and

23            argue information that may already be known to the

24            Court, including information contained in the

25            Presentence Investigation Report;

26      v.    The United States and Defendant may each respond to

27            any arguments presented by the other;

28

PLEA AGREEMENT - 11

vi.     In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii.    In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii.   The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix.    Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

 e. *No Other Agreements*

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances.

 f. *Criminal History*

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

 10. <u>Incarceration</u>

At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

PLEA AGREEMENT - 13

The United States agrees to recommend a sentence within the Guidelines, as calculated by the United States.

The Defendant may argue any lawful sentence.

The parties agree to recommend that this sentence run concurrently with the state sentence previously imposed in Chelan County case number 23-1-0003-04.

11.  <u>Supervised Release</u>

The United States and Defendant each agree to recommend 3 years of supervised release.  Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

      a.     The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

      b.     Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

      c.     Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider.  Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider.  Defendant shall contribute to the cost of treatment according to the Defendant's ability.

PLEA AGREEMENT - 14

1  12.  Criminal Fine

2  The United States and Defendant may make any recommendation

3  concerning the imposition of a criminal fine.  Defendant acknowledges that the

4  Court's decision regarding a fine is final and non-appealable; that is, even if

5  Defendant is unhappy with a fine ordered by the Court, that will not be a basis for

6  Defendant to withdraw Defendant's guilty plea, withdraw from this Plea

7  Agreement, or appeal Defendant's conviction, sentence, or fine.

8  13.  Mandatory Special Penalty Assessment

9  Defendant agrees to pay the $100 mandatory special penalty assessment for

10  each count of conviction to the Clerk of Court for the Eastern District of

11  Washington, pursuant to 18 U.S.C. § 3013.

12  14.  Payments While Incarcerated

13  If Defendant lacks the financial resources to pay the monetary obligations

14  imposed by the Court, Defendant agrees to earn money toward these obligations by

15  participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16  15.  Additional Violations of Law Can Void Plea Agreement

17  The United States and Defendant agree that the United States may, at its

18  option and upon written notice to the Defendant, withdraw from this Plea

19  Agreement or modify its sentencing recommendation if, prior to the imposition of

20  sentence, Defendant is charged with or convicted of any criminal offense or tests

21  positive for any controlled substance.

22  16.  Waiver of Appeal Rights

23  Defendant understands that Defendant has a limited right to appeal or

24  challenge Defendant's conviction and the sentence imposed by the Court.

25  In return for the concessions that the United States has made in this Plea

26  Agreement, Defendant expressly waives all of Defendant's rights to appeal any

27  aspect of Defendant's conviction and/or the sentence the Court imposes, on any

28  grounds.

PLEA AGREEMENT - 15

1    Defendant expressly waives Defendant's right to appeal any fine, term of
2    supervised release, or restitution order imposed by the Court.

3    Defendant expressly waives the right to file any post-conviction motion
4    attacking Defendant's conviction and sentence, including a motion pursuant to 28
5    U.S.C. § 2255, except one based on ineffective assistance of counsel arising from
6    information not now known by Defendant and which, in the exercise of due
7    diligence, Defendant could not know by the time the Court imposes sentence.

8    Nothing in this Plea Agreement shall preclude the United States from
9    opposing any post-conviction motion for a reduction of sentence or other attack
10   upon the conviction or sentence, including, but not limited to, writ of habeas
11   corpus proceedings brought pursuant to 28 U.S.C. § 2255.

12       17.    Withdrawal or Vacatur of Defendant's Plea
13   Should Defendant successfully move to withdraw from this Plea Agreement
14   or should Defendant's conviction be set aside, vacated, reversed, or dismissed
15   under any circumstance, then:

16       a.    Any obligations, commitments, or representations made by the
17             United States in this Plea Agreement shall become null and
18             void;
19       b.    The United States may prosecute Defendant on all available
20             charges;
21       c.    The United States may reinstate any counts that have been
22             dismissed, have been superseded by the filing of another
23             charging instrument, or were not charged because of this Plea
24             Agreement; and
25       d.    The United States may file any new charges that would
26             otherwise be barred by this Plea Agreement.

27   The decision to pursue any or all of these options is solely in the discretion
28   of the United States Attorney's Office.

PLEA AGREEMENT - 16

1    Defendant agrees to waive any objections, motions, and/or defenses

2    Defendant might have to the United States' decisions to seek, reinstate, or reinitiate

3    charges if a count of conviction is withdrawn, set aside, vacated, reversed, or

4    dismissed, including any claim alleging a violation of Double Jeopardy.

5    Defendant agrees not to raise any objections based on the passage of time,

6    including but not limited to alleged violations of any statutes of limitation or any

7    objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth

8    Amendment.

9    18.    Integration Clause

10    The United States and Defendant acknowledge that this document

11    constitutes the entire Plea Agreement between the United States and Defendant,

12    and no other promises, agreements, or conditions exist between the United States

13    and Defendant concerning the resolution of the case.

14    This Plea Agreement is binding only on the United States Attorney's Office

15    for the Eastern District of Washington, and cannot bind other federal, state, or local

16    authorities.

17    The United States and Defendant agree that this Agreement cannot be

18    modified except in a writing that is signed by the United States and Defendant.

19

20    <u>Approvals and Signatures</u>

21    Agreed and submitted on behalf of the United States Attorney's Office for

22    the Eastern District of Washington.

23    Vanessa R. Waldref
    United States Attorney

24

25    _____        12 - 13 - 2024

26    Lisa C. Cartier Giroux        Date
    Assistant United States Attorney

27

28

PLEA AGREEMENT - 17

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____          12-13-24
Filiberto Santana                        Date
Defendant


I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____          12/12/24
Brooke Hagara                            Date
Attorney for Defendant

PLEA AGREEMENT - 18